UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ZACHARY TIBRE ROBEY,<br><br>          Petitioner,<br><br>     vs.<br><br>BRENDA CASH, Warden,<br><br>          Respondent. | No. 11-2054 PJH (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING MOTION FOR AN EVIDENTIARY HEARING, AND GRANTING CERTIFICATE OF APPEALABILITY** |

This is a habeas corpus case filed pro se by a state prisoner pursuant to 28 U.S.C. § 2254. The court ordered respondent to show cause why the writ should not be granted. Respondent filed an answer and a memorandum of points and authorities in support of it, and lodged exhibits with the court. Petitioner responded with a traverse and a motion for an evidentiary hearing. For the reasons set out below, the motion and the petition are denied.

**BACKGROUND**

On June 13, 2007, a jury convicted petitioner of two counts of first degree robbery, dissuading a witness, extortion, and possession of methamphetamine. Clerk's Transcript ("CT") at 177-79, 254-55. The jury found true the enhancement that petitioner personally used a firearm when he committed the robberies and extortion. CT at 254. Petitioner was sentenced to twenty-five years and eight months in prison. CT at 299. The California Court of Appeal affirmed the judgment, and a petition for review was summarily denied by the California Supreme Court. *People v. Robey*, No. H032101, 2009 WL 3208689 (Cal. Ct. App. Oct. 7, 2009); Answer Ex. E. Habeas petitions to the Santa Clara County Superior Court and California Supreme Court were also denied. Answer, Exs. F, G.

The facts, as described by the California Court of Appeal, are as follows:

The convictions in this case arose out of three separate incidents. Since defendant does not challenge his convictions on the robbery counts, we only briefly summarize the evidence related to those counts.

**Prosecution Case: The Robberies**
On January 24, 2007, while walking home from school, 13-year-old F.R. tried to throw a rock at a stop sign. He missed and hit defendant's mother's car, a Mitsubishi Lancer. Defendant was driving the car and followed F.R. home. Along the way, defendant swore at F.R. and threatened to run him over. He said he had a gun, "so don't play around with me."

When F.R. got home, he tried to get inside his house, but the front door was locked and he had forgotten his key. His parents were at work. Defendant backed his car into F.R.'s driveway, got out of the car, and told F.R. he wanted to talk to his parents. F.R. offered defendant $40 and his cell phone to go away. Defendant said he wanted the car fixed. Defendant pulled up his shirt and showed F.R. a gun, which was tucked in his waistband.

F.R.'s twin brother, A.R., arrived. A.R. got into the house through the garage or a side door. A.R. asked defendant to stay in the garage, but defendant followed the boys into the house. When A.R. attempted to call his father, defendant hung up the phone.

Defendant heard a noise and told the boys to go upstairs. Defendant followed the boys into their parents' bedroom, where he saw several jewelry boxes. He told the boys to "get a bag and give me all the goods." The boys got some garbage bags. Defendant pulled out his gun and touched the things he wanted the boys to put in the bags with the barrel of the gun. They went from room to room and took jewelry, 16 handbags, three television sets, two hand-held video games, a laptop computer, clothing, money, tools, the telephone, and the boys' cell phones. Defendant hit A.R. in the face twice with the handle of the gun. When A.R. dropped a purse, defendant opened the gun's chamber and showed A.R. the bullets.

Defendant told the boys to back his car into the garage. While A.R. backed the car into the garage, defendant put his arm around F.R.'s neck and held the gun up against F.R.'s ribs. The boys loaded the items into the car. F.R. made a note of defendant's license plate number and called the police after defendant left.

**Defense Case: Robberies**
Defendant testified. He told the jury that he never yelled at F.R., that he did not go inside the house except to wash his hands in the bathroom, that he did not have a gun, that he never hit or threatened the boys, that the boys tried to "bribe" him, and that they gave him the items to compensate for the damage to his mother's car. Defendant told the jury that he sells methamphetamine and that he gave most of the stolen property to a friend who needed money.

**Prosecution Case: Extortion, Dissuading a Witness, and Drug Possession Counts**
Defendant had testified on February 1, 2007, that he "crashed" his mother's Lancer into a parked car and left the scene of the accident. Shortly thereafter, defendant lied to his mother and told her that the car had been

2

stolen. The police responded to the scene of the accident, searched the Lancer, and found defendant's driver's license and a piece of paper with the name "Rodel Garcia" written on it. Sergeant Nieves, who was assigned to the robbery investigation, contacted Garcia and that led him to another victim, George Isla.

Isla testified through a Tagalog interpreter. Isla worked at Garcia's auto body shop and met defendant there. One day, defendant told Isla that Garcia had said that Isla should lend Isla's brother's white Ford Mustang (White Mustang) to defendant. According to Isla, defendant was going to use the car to "get" another car from another place. During that conversation, defendant said, "You want to see a gun?" and pulled a .38 caliber "Python" from his waistband. Defendant showed Isla the bullets in the chamber and said they were silver. Later that day, Isla gave defendant the keys to the White Mustang.

Defendant did not return the car. Isla tried to contact him by phone later that day, but defendant never responded. Isla spoke with defendant by phone the following day and asked him for the car back. Defendant said he would return the car if Isla gave him another Mustang and $900.

Isla met face to face with defendant a day or two after he lent him the car. They drove around south and east San Jose in a Camaro for seven hours, from 4:00 p.m. to 11:00 p.m. They stopped at several houses and visited defendant's child.

The following morning, defendant drove Isla to Isla's house in Milpitas to get some money for defendant. Defendant said that Isla owed him $500 and that it would cost Isla $500 to get the White Mustang back. During the drive, defendant showed Isla his gun and said "This is your last chance." Some time before that, defendant said, "'If you will call the police sorry for you.'"

Isla got $500 from his brother and sister. However, he did not give the money directly to defendant. He gave it to Garcia to give to defendant. He asked Garcia to go with defendant to pick up the White Mustang and to give the money to defendant after defendant gave Garcia the car. Isla saw Garcia drive away with defendant. Garcia came back later on foot. He did not have the car or the $500.

Isla denied using methamphetamine. Isla testified that he never bought methamphetamine from defendant and that he did not owe defendant any money. Isla never called the police to report what had occurred.

Defendant was arrested at a shopping mall on February 5, 2007. During the search incident to his arrest, the officers found a baggie of white powder in defendant's right rear pants pocket and a set of keys. The officers also found "a couple bags of clothing" that contained T-shirts, a baseball hat, a pair of jeans and some shoes. Everything except the jeans and the shoes looked newly purchased. Laboratory testing confirmed that the white powder was 5.5 grams of methamphetamine. Sergeant Nieves searched the mall parking lot and found the White Mustang. The keys the officer had found on defendant's person opened the door and started the car.

**Defense Case: Extortion, Dissuading a Witness, and Drug Possession Counts**

3

Defendant testified that he sold methamphetamine to Garcia and referred auto repair business to Garcia. At the time of the robbery, Garcia was working on three of defendant's cars.

Defendant went to Garcia's shop a couple of days after the robbery to check on his cars and met Isla. Defendant described Isla as an "excessive drug user," a "crack-head ... just another guy that smokes dope." Defendant did not have a business relationship with Isla, but thought he was going to start one that day. Defendant and Isla talked about sending methamphetamine to "the island"; Isla said he had family that worked at the airport. Defendant gave Isla one ounce of methamphetamine. Defendant testified that Isla owed him $900 for the methamphetamine. Isla told defendant he would have defendant's money two days later.

Defendant returned two days later, but Isla did not have the money. According to defendant, Isla made excuses and tried to give defendant some "fake dope." Defendant talked to Garcia, Garcia talked to Isla, and then Isla offered defendant the White Mustang and said he would pay defendant the $900 in time. Defendant left in the White Mustang.

Isla called defendant a few days later and told defendant the White Mustang belonged to his brother. Defendant got mad when he found out Isla did not own the car. Isla said he needed the car back, but had another Mustang at his sister's house. As it turned out, the second Mustang had been sold.

Defendant saw Isla two days later. Isla said he had money for defendant; defendant figured Isla was trying to buy the White Mustang back. According to defendant, Isla gave Garcia $500 to give to defendant in exchange for the White Mustang. Garcia rode with defendant and a woman to an unspecified street corner. Defendant dropped Garcia off, told him to wait at the corner, and went to get the White Mustang. When defendant returned with the White Mustang, Garcia was gone. According to defendant, Garcia never gave him the money.

Defendant testified that he did not show Isla a firearm and that he never owned a gun.

*Robey*, 2009 WL 3208689, at 1-4.

## STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to

4

mixed questions of law and fact, *see Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *see Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *See Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991). Thus, a federal court will "look through" the unexplained orders of the state court's rejection of a petitioner's claims and analyze whether, in the last reasoned opinion, the state court unreasonably applied Supreme Court precedent. *See Ylst,* 501 U.S. at 804-06. For claims one and two, the court looks to the opinion of the California Court of Appeal on direct appeal. For claim three, the court looks to the opinion of the Superior Court of Santa Clara which denied petitioner's state habeas petition. Answer, Ex. G.

**DISCUSSION**

As grounds for federal habeas relief, petitioner asserts that: (1) trial counsel was ineffective for failing to object to prosecutorial misconduct; (2) there was insufficient evidence to support the dissuading-a-witness conviction and the firearm enhancement; and (3) appellate counsel was ineffective for failing to raise a claim regarding the admission of hearsay evidence, an improper jury instruction on extortion, and improper sentencing.

**I.   Ineffective Assistance of Trial Counsel**

Petitioner argues that trial counsel was ineffective for failing to object to the prosecutor's argument to the jury regarding the law of extortion.

**Legal Standard**

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Id.*

In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, petitioner must establish two things. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Strickland*, 466 U.S. at 687-88. Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 699. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

The *Strickland* framework for analyzing ineffective assistance of counsel claims is considered to be "clearly established Federal law, as determined by the Supreme Court of the United States" for the purposes of 28 U.S.C. § 2254(d) analysis. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011). A "doubly" deferential judicial review is appropriate in

analyzing ineffective assistance of counsel claims under § 2254. *See id.* at 1410–11. The general rule of *Strickland*, i.e., to review a defense counsel's effectiveness with great deference, gives the state courts greater leeway in reasonably applying that rule, which in turn "translates to a narrower range of decisions that are objectively unreasonable under AEDPA." *Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). When § 2254(d) applies, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

To demonstrate deficient performance, a petitioner is required to show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *See Strickland*, 466 U.S. at 687.

**Analysis**

The California Court of Appeal set forth the relevant background for this claim:

> The court instructed that jury with CALCRIM No. 1830, which provides, in part, that to prove extortion, the prosecution must prove: "1. The defendant threatened to unlawfully injure or use force against another person or a third person, or the property of another person or a third person; [¶] 2. When making the threat, the defendant intended to use that fear to obtain the other person's consent to give the defendant money; [¶] 3. As a result of the threat or use of force, the other person consented to *give* defendant money; [¶] AND [¶] 4. As a result of the threat or use of force, the other person then *gave* the defendant money." (Italics added.) The issues on appeal involve the prosecutor's argument regarding the fourth element of the crime. We set forth the argument in context, with the specific language at issue in italics.
>
> The prosecutor listed the elements of extortion set forth in the jury instruction and stated, *"Now notice that there's no requirement for me to prove that the defendant actually received the money."* (Italics added.) The prosecutor continued: "Hearing the evidence suggests that the defendant did receive the money. Mr. Isla testified that he gave the money to Rodel Garcia. Defendant concedes that Mr. Garcia had the five hundred dollars. Mr. Isla describes Mr. Garcia coming back from his meeting with the defendant angry. And two days later the defendant is found at a shopping mall having just gone on a little shopping spree with drugs in his pocket, consistent with someone having just received a sum of money. [¶] But remember, the only thing you have to decide beyond a reasonable doubt is, did Mr. Isla give the money to the defendant? Which he did. And the defendant seems to concede as much."
>
> In addition, the prosecutor argued that she had met her burden by presenting evidence that Isla gave the money to Garcia. The prosecutor stated: "I've

7

> lumped elements three and four together in this last fact, as a result, George Isla consented to and then did give Rodel Garcia the money." In argument regarding the lesser included offense of attempted extortion, the prosecutor stated: "But now let's go back to the first element. The defendant took a direct but ineffective step toward committing extortion by threat. Here his efforts were totally effective. They caused Mr. Isla to give Rodel Garcia the five hundred dollars. So that's why I think that we don't have an attempted extortion, we do had a completed extortion...." In summary, the prosecutor argued both that defendant actually received the money and that Isla gave the money to Garcia.
>
> Defendant contends that the prosecutor misstated the law of extortion when she told the jurors that she was not required to prove that defendant actually received the $500 and that, in so doing, she committed misconduct.

*Robey*, 2009 WL 3208689, at 4-5.

After setting forth the relevant law regarding extortion, the California Court of Appeal concluded that, "the prosecution can meet its burden of showing that the defendant obtained property from the victim by showing that the defendant or an agent of the defendant received the property." *Robey*, 2009 WL 3208689, at 10. The state court then discussed the law of prosecutorial misconduct and ineffective assistance of counsel and denied the claim:

> As we stated, the argument at issue involves the fourth element of extortion set forth in the jury instruction, which required the prosecution to prove that as "a result of the threat or use of force, the other person then *gave* the defendant money." (Italics added.) The keys points in the prosecution's argument include: "Now notice that there's no requirement for me to prove that the defendant actually received the money. ... [¶] But remember, the only thing you have to decide beyond a reasonable doubt is, did Mr. Isla *give* the money to the defendant? Which he did." [¶] ... [¶] I've lumped elements three and four together in this last fact, as a result, George Isla consented to and then did give Rodel Garcia the money." (Italics added.)  In her argument regarding attempted extortion, the prosecutor argued that defendant did not take "a direct but ineffective step toward committing extortion by threat. Here his efforts were totally effective. They caused Mr. Isla to give Rodel Garcia the five hundred dollars."
>
> Focusing on the word "defendant" rather than the word "received" in the prosecution's statement that "there's no requirement [that she] prove that the defendant actually received the money" and viewing the statement in the context of the entire argument, leads us to conclude that the prosecutor was arguing that Garcia was defendant's agent and that the prosecution had met its burden of showing that Isla gave the money to defendant by showing that Isla gave the money to Garcia. After the prosecutor told the jury that she did not have to prove that defendant actually received the money, she did not argue that proof of the threat alone was sufficient to prove extortion. Instead, she argued that she met her burden of proving Isla gave the money to defendant by showing that Isla gave FN3 the money to Garcia. Such an

8

argument is consistent with our interpretation of section 518. Moreover, it was up to the jury to decide whether Garcia was acting on defendant's behalf when Isla gave Garcia the money.

> FN3. The instruction on extortion did not state that defendant or his agent needed to actually receive the money. Instead, the court instructed the jury that the fourth element of the offense required the prosecution to show that "As a result of the threat or use of force, the other person then gave the defendant money." (Italics added.) There were no instructions that told the jury that defendant could act through an agent. Defendant does not claim instructional error and the adequacy of the instruction is not before us.

In addition to arguing that Isla gave the money to Garcia, the prosecutor argued that defendant had actually received the money. The evidence supported that assertion. Isla testified that Garcia came back without the money and without the car and that Garcia was angry when he returned. A reasonable inference from that evidence is that Garcia gave defendant the money but defendant did not give Garcia the car as arranged. Isla did not testify that he thought Garcia pocketed the money and there was no evidence that Garcia took the money. A couple of days after Isla gave the money to Garcia, defendant went shopping, which, as the prosecutor argued, suggests that he had come into some money. Although defendant testified that he did not receive the money from Garcia, the jury may not have believed him. Defendant was an admitted methamphetamine dealer who brandished a weapon at two 13-year-old boys, hit one of the boys with the gun, held the other at gunpoint, and took advantage of their fear to rob their home. Defendant also admitted he lied to his mother and abandoned the scene of an accident when he wrecked her car.

Based on our conclusion regarding the law of extortion and the evidence and argument in this case, we cannot say that the prosecutor committed misconduct when she told the jury that "there's no requirement for me to prove that the defendant actually received the money." In our view, the prosecutor's argument does not amount to misconduct under either the federal or the state standard. Since the prosecutor did not commit misconduct, we conclude that defense counsel was not ineffective when he failed to object to the prosecutor's argument. We therefore reject defendant's ineffective assistance of counsel claim.

*Robey*, 2009 WL 3208689, at 10-11.

Petitioner has failed to demonstrate that the state court opinion was an unreasonable application of Supreme Court authority. Petitioner has not shown that the prosecutor's comments were misconduct or that trial counsel was ineffective for failing to object. The state court held that California law does not require that the defendant receive property directly from the victim to prove extortion or that the defendant actually receive the money when the defendant uses an agent. To the extent that petitioner challenges this

interpretation of state law, he is not entitled to federal habeas relief.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law).  As set forth above, the victim testified that because he was scared, he gave the money to another individual, Rodel Garcia, to give the money to petitioner.  Reporter's Transcript ("RT") at 180.  The prosecutor also argued, and the evidence could support, that petitioner did receive the money from Rodel Garcia.  While petitioner testified that he did not receive the money, the jury did not have to credit his testimony, and regardless, state law does not require that petitioner actually receive the money when an agent is used.

Therefore, petitioner has not shown that the prosecutor's comment was misconduct or that the trial counsel was ineffective for failing to object because the comment accurately reflected state law.  While the prosecutor's comment may have been confusing or ambiguous, the jury was properly instructed by the trial court and the jury is presumed to have followed its instructions.  *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000).  The comment was not misconduct that was so improper that it infected the entire trial with unfairness, *see Tan v. Runnels*, 413 F.3d 1101, 1112 (9th Cir. 2005), especially as evidence supported the argument that petitioner received the money from Rodel Garcia.  Thus, even assuming that trial counsel was deficient for failing to object, petitioner cannot demonstrate prejudice based on the evidence presented and California law.  This claim is denied because petitioner cannot meet the "doubly" deferential judicial review in analyzing ineffective assistance of counsel claims under § 2254.  *Cullen*, 131 S. Ct. 1388, 1410-11.

**II.    Sufficiency of the Evidence**

Petitioner next argues that there was insufficient evidence to support his conviction for dissuading a witness or for the firearm enhancement related to that count.

**Legal Standard**

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970).  A state prisoner who alleges that the

evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt therefore states a constitutional claim, *see Jackson v. Virginia*, 443 U.S. 307, 321 (1979), which, if proven, entitles him to federal habeas relief, *see id.* at 324.

The Supreme Court has emphasized that "*Jackson* claims face a high bar in federal habeas proceedings . . . ." *Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012) (per curiam) (finding that the 3rd Circuit "unduly impinged on the jury's role as factfinder" and failed to apply the deferential standard of *Jackson* when it engaged in "fine-grained factual parsing" to find that the evidence was insufficient to support petitioner's conviction). A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1992). The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Payne*, 982 F.2d at 338 (quoting *Jackson*, 443 U.S. at 319). Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt, has there been a due process violation. *Jackson*, 443 U.S. at 324; *Payne*, 982 F.2d at 338.

**Dissuading a Witness**

The California Court of Appeal found that there was sufficient evidence to support this count:

> Defendant contends that the only evidence that supported his conviction for dissuading a witness was Isla's testimony that defendant had told Isla "If you will call the police sorry for you." Defendant argues that the statement was an expression of pity and not a threat and that it was too ambiguous to constitute dissuasion of a witness.
>
> . . .
>
> Defendant was charged with dissuading or attempting to dissuade a witness in violation of section 136.1, subdivision (c)(1). Section 136.1 provides in relevant part that "every person who attempts to prevent or dissuade another person who has been the victim of a crime" from "[m]aking any report of that victimization to any peace officer or state or local law enforcement officer ... or prosecuting agency or to any judge" is guilty of a public offense. (§ 136.1, subd. (b)(1).) Subdivision (c)(1) of the statute provides that every person who

11

> does such acts "knowingly and maliciously ... [w]here the act is accompanied by force or by an express or implied threat of force or violence, upon a witness or victim or any third person or the property of any victim, witness, or any third person" is guilty of a felony. The crime of dissuading a witness from testifying can involve a continuous course of conduct. (*People v. Salvato* (1991) 234 Cal.App.3d 872.)
>
> In this case, there was sufficient evidence that supported both the jury's conclusion that defendant was guilty of dissuading a witness . . . . Isla testified through an interpreter and was not a very articulate witness. However, after reviewing his testimony regarding what defendant said to him in the context of relevant events, we conclude that the evidence was sufficient to support the jury's verdict on the dissuading a witness count. Isla testified that after Garcia told him to lend defendant the White Mustang, defendant asked Isla if he wanted to see a gun and showed him a revolver that he kept in his waistband. Defendant also showed Isla that there were bullets in the chamber of the gun. Later that day, Isla lent defendant the White Mustang. The following day, when Isla asked for the car back, defendant demanded another car and $900. A day or two later, Isla and defendant drove around for seven hours until 11:00 p.m. The following morning, defendant drove Isla home. During that drive, defendant showed Isla the gun again; said, "'This is your last chance'"; and demanded $500. Isla testified that at an unspecified time before that, defendant said "'If you will call the police sorry for you.'" Viewing this evidence as a continuous course of conduct that spanned three or four days, we reject defendant's contention that the phrase "'If you will call the police sorry for you'" was ambiguous or a statement of pity and not a threat and conclude that there was sufficient evidence to support the verdict on the dissuading a witness count.

*Robey*, 2009 WL 3208689, at 11-12.

Petitioner has failed to demonstrate that the California Court of Appeal opinion was an unreasonable application of *Jackson*. The state court noted that the evidence that supported the dissuading-a-witness conviction was sufficient to support the charge. Petitioner showed the victim a gun, showed him that it was loaded, told him it was his last chance to pay the money and then stated, "[i]f you will call the police sorry for you." While petitioner argues his statement was ambiguous and not a threat, a jury could have found that the statement and petitioner's other actions with the loaded gun were sufficient to find him guilty. Petitioner is not entitled to habeas relief because viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

**Firearm Enhancement**

The state court also found there was sufficient evidence to support the firearm

12

enhancement:

> Defendant also contends there was insufficient evidence to support the gun enhancement on the dissuasion count since Isla testified that the statement was made some time before defendant showed him the gun and Isla did not "relate the two incidents."
>
> . . .
>
> We also reject defendant's contention that the evidence was insufficient to support the jury's true finding on the gun enhancement. As outlined above, Isla testified that defendant first showed him the gun while attempting to obtain the car. Just as he had done with F.R. and A.R., defendant pulled the gun from his waistband and made sure Isla knew the gun was loaded by showing Isla the bullets in the gun's chamber. The following day, defendant demanded money for the return of the White Mustang and when he encountered a delay in getting the money, he showed Isla the gun again and told him it was his last chance to comply.
>
> "[I]f the defendant is found on substantial evidence to have displayed a firearm in order to facilitate the commission of an underlying crime, a use of the gun has occurred both as a matter of plain English and of carrying out the intent of section 12022.5(a). Thus when a defendant deliberately shows a gun, or otherwise makes its presence known, and there is no evidence to suggest any purpose other than intimidating the victim (or others) so as to successfully complete the underlying offense, the jury is entitled to find a facilitative use rather than an incidental or inadvertent exposure. The defense may freely urge the jury not to draw such an inference, but a failure to actually point the gun, or to issue explicit threats of harm, does not entitle the defendant to a judicial exemption from section 12022.5(a)." (*People v. Granado* (1996) 49 Cal. App. 4th 317, 325.)
>
> As set forth above, Isla testified that defendant showed the gun to Isla when he said "This is your last chance" and demanded $500 for the return of the White Mustang. Defendant argues that there was insufficient evidence that defendant used the gun to dissuade Isla from reporting the offense to the police. He relies on Isla's testimony that defendant said "If you will call the police sorry for you" before he said "This is your last chance." However, that testimony was part of a line of questioning about what happened when defendant drove Isla home to get some money. Given this context, the jury may have concluded that defendant made both statements during the car ride in which defendant brandished the gun. In our view, that would be sufficient to support imposition of the gun enhancement.

*Robey*, 2009 WL 3208689, at 11-13.

Similarly there was sufficient evidence to support the gun enhancement and the California Court of Appeal did not unreasonably apply Supreme Court precedent in affirming the enhancement. Petitioner brandished a gun on multiple occasions and showed the victim that it was loaded. While it did not happen simultaneously with his statement to the victim about not calling the police, state law provides for a continuous course of action

to support a dissuading-a-witness charge.  *People v. Salvato*, 234 Cal. App. 3d 872 (Cal. Ct. App. 1991).  There was sufficient evidence of petitioner's use of a gun to support the jury's true finding on the gun enhancement, and petitioner has failed to show that the state court decision was unreasonable.  This claim is denied.

**III.    Ineffective Assistance of Appellate Counsel**

Petitioner argues that appellate counsel was ineffective for failing to raise a claim regarding the admission of hearsay evidence, an improper jury instruction on extortion, and improper sentencing.  Petitioner raised this claim in a habeas petition to the Superior Court of Santa Clara County which denied it in a reasoned opinion.

**Legal Standard**

The Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant the effective assistance of counsel on his first appeal as of right.  *Evitts v. Lucey*, 469 U.S. 387, 391-405 (1985).  Claims of ineffective assistance of appellate counsel are reviewed according to the standard set out in *Strickland*.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Moormann v. Ryan*, 628 F.3d 1102, 1106 (9th Cir. 2010).  First, the petitioner must show that counsel's performance was objectively unreasonable, which in the appellate context requires the petitioner to demonstrate that counsel acted unreasonably in failing to discover and brief a merit-worthy issue.  *Smith*, 528 U.S. at 285; *Moormann*, 628 F.3d at 1106.  Second, the petitioner must show prejudice, which in this context means that the petitioner must demonstrate a reasonable probability that, but for appellate counsel's failure to raise the issue, the petitioner would have prevailed in his appeal.  *Smith*, 528 U.S. at 285-86; *Moormann*, 628 F.3d at 1106.  Appellate counsel does not have a constitutional duty to raise every nonfrivolous issue requested by defendant.  *See Jones v. Barnes*, 463 U.S. 745, 751-54 (1983).  The weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy.  *Id.* at 751-52.

**Hearsay Evidence**

Petitioner argues that appellate counsel should have raised a claim regarding the trial court's decision to permit the victim to testify that Rodel Garcia did not have the $500

14

when he returned on foot after being picked up by petitioner. The following exchange took place during the victim's testimony:

| | |
|---|---|
| Prosecutor: | Without telling us anything Rodel told you; when Rodel came back did he have five hundred dollars on him? |
| Victim: | He was angry. |
| Prosecutor: | When Rodel came back did he have five hundred dollars on him? |
| Victim: | No because he gave it to [petitioner]. |
| Counsel: | Objection. Hearsay, your honor. Move to strike. |
| Court: | That part that he gave it to [petitioner] will be stricken. |
| Prosecutor: | When Rodel came I take it he didn't have a car with him. |
| Victim: | None. |

RT at 181-82.

Petitioner argues that the trial court should have stricken the entire answer, namely the part that Rodel Garcia did not return with the money. The Superior Court denied this claim:

> In the present case, petitioner has failed to show ineffective assistance of appellate counsel. Petitioner has failed to show that allowing [the victim's] testimony that [Rodel] Garcia did not have the $500 after meeting with defendant was unconstitutionally prejudicial. As explained in the Court of Appeal opinion, defendant could be found guilty of extortion by acting through an agent. The testimony showed that [the victim] and defendant agreed to have [Rodel] Garcia accept the money from defendant. (Tx. 180.) Accordingly, when [Rodel] Garcia received the money from [the victim], the crime of extortion was completed. The issue of whether [Rodel] Garcia kept the money or not was not necessary to determine defendant's guilt.

Answer, Ex. G at 3-4.

The state court opinion was not an unreasonable application of *Strickland*. Moreover, even if appellate counsel was deficient for failing to raise this claim, petitioner cannot demonstrate that he would have prevailed on the appeal. Petitioner does not adequately describe why the victim's answer should have been stricken, whether it was still hearsay or if more clarification was required. Regardless, petitioner testified that he met with Rodel Garcia and was supposed to have received the $500, but he did not take it. RT

at 256. It does not appear that the jury credited this testimony, and, as noted in the claim above, California law does not require that the defendant receive property directly from the victim to prove extortion when an agent is used. Thus, the failure to raise this claim on appeal does not entitle petitioner to habeas relief.

**Jury Instruction**

Petitioner next argues that appellate counsel was ineffective for failing to raise a claim that the trial court erred when it gave California Criminal Jury Instruction ("CALCRIM") 1830.[1] Petitioner argues that this jury instruction permitted a conviction on the prosecution's agency theory of extortion without proving that Rodel Garcia was petitioner's authorized agent in taking the money. Petitioner argues there should have been an additional instruction regarding the agency theory.

While petitioner is correct that the jury instruction did not contain any language regarding the agency theory, he has not shown that appellate counsel was ineffective for failing to raise this claim. On direct appeal, the California Court of Appeal held that petitioner could be found guilty of extortion when an agent received the property from the victim. The Court of Appeal noted the lack of an instruction regarding the agency theory, but did not address the issue because it was not before the court. *Robey*, 2009 WL 3208689, at 10, n.3.

The Superior Court also denied this claim in a reasoned opinion:

> ". . . The failure to instruct on an essential element of the offense actually charged is error whenever there is any evidence deserving of any consideration from which the jury could have found in favor of the defendant on the omitted element; because such an error is denial of the defendant's constitutional right to have the jury determine every material issue presented by the evidence, regardless of how overwhelming the evidence of guilt may

---

[1] The jury was instructed that to prove extortion the People needed to prove that:
1. The defendant threatened to unlawfully injure or use force against another person or a third person, or the property of another person or third person;
2. When making the threat, the defendant intended to use that fear to obtain the person's consent to give the defendant money;
3. As a result of the threat or use of force, the other person consented to give the defendant money;
4. As a result of the threat or use of force, the other person then gave the defendant money. CT at 230.

16

> be, the error cannot be cured by weighing the evidence and finding that it is not reasonably probable that a correctly instructed jury would have reached a result more favorable to the defendant." (*People v. Hamilton*, (1978) 80 Cal. App. 3d 123, 133.)
>
> In the instant case, there is no evidence supporting defendant's position on the elements of agency. Defendant has not presented any evidence to contradict [the victim's] testimony that Defendant and [the victim] had agreed Garcia was to receive the money [the victim] owed defendant. There was no evidence therefore for the jury to find in favor of defendant. Accordingly, giving the instruction was not required.

Answer, Ex. G at 4-5.

Petitioner has not shown that the Superior Court's denial of this claim was unreasonable. Assuming that appellate counsel did err by not raising this claim, petitioner has not demonstrated that he would have prevailed in the appeal. After assessing the merits of the underlying claim, the court does not find that petitioner presents a meritorious claim. Any error by the trial court for failing to sua sponte add the instruction was harmless nor was trial counsel ineffective for failing to object or request the instruction. Looking to the legal standard set forth by the state court, petitioner would not have been entitled to relief. The additional jury instruction that petitioner requests would have clarified how he was guilty due to an agency theory, and would have better reflected the evidence presented at trial. As noted by respondent, the instruction provided to the jury without the language regarding agency could have favored petitioner. The instruction that petitioner argues was required would not have aided him. Under state law, petitioner would not have prevailed, thus appellate counsel was not ineffective for failing to raise the claim. This claim is denied.[2]

**Sentencing**

Petitioner next contends that appellate counsel was ineffective for failing to raise a claim that the trial court imposed an unauthorized consecutive sentence for dissuading a

---

[2] Nor would petitioner be entitled to relief had he raised this claim solely with respect to the jury instruction. To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. *See Estelle v. McGuire*, 502 U.S. at 72; *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). While additional language could have made the instruction more clear, the absence of it did not infect the entire trial to result in a due process violation.

17

witness (Cal. Penal Code § 136.1), pursuant to Cal. Penal Code § 1170.15. Petitioner states that a fully consecutive middle term sentence for dissuading a witness was imposed when one-third of the middle term should have been imposed instead.

The Superior Court denied this claim, stating, "[l]astly, there was no error in sentencing on the dissuading a witness charge. Petitioner misreads PC 1170.15. There is no requirement in the statute that the 136.1 charge must be run consecutively to the extortion charge in order for the full middle term to be imposed." Answer, Ex. G at 5.

It appears that petitioner is referring to Cal. Penal Code § 1170.1(a), which provides that the subordinate term for a consecutive sentence shall consist of one-third of the middle term. *See id*. However, petitioner was sentenced pursuant to Cal. Penal Code § 1170.15, which specifically serves as an exception to § 1170.1(a) and provides for the full middle term of imprisonment when a defendant is convicted of dissuading a witness in relation to the other conviction. Because petitioner's first felony concerned the extortion of the victim and he was also convicted of dissuading the witness with respect to the extortion, petitioner was properly sentenced pursuant to § 1170.15. Therefore, appellate counsel was not ineffective for failing to raise this claim.

**IV.     Appealability**

The federal rules governing habeas cases brought by state prisoners require a district court that denies a habeas petition to grant or deny a certificate of appealability ("COA") in the ruling. *See* Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (effective December 1, 2009).

To obtain a COA, petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Section 2253(c)(3) requires a court granting a COA to indicate which issues satisfy the COA standard. Here, the court finds that petitioner's

first and third claim regarding ineffective assistance of trial and appellate counsel meet the above standard and accordingly GRANTS the COA solely for those claims. *See generally Miller-El*, 537 U.S. at 327.

Accordingly, the clerk shall forward the file, including a copy of this order, to the Court of Appeals. *See* Fed. R. App. P. 22(b); *United States v. Asrar*, 116 F.3d 1268, 1270 (9th Cir. 1997). Petitioner is cautioned that the court's ruling on the certificate of appealability does not relieve him of the obligation to file a timely notice of appeal if he wishes to appeal.

## CONCLUSION[3]

1. For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED**.

2. Petitioner's motion for an evidentiary hearing (Docket No. 21) is **DENIED**.

A Certificate of Appealability is **GRANTED**. *See* Rule11(a) of the Rules Governing Section 2254 Cases.

The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: September 12, 2014.

PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\HC.11\Robey2054.hc.wpd

---

[3] Petitioner has also requested an evidentiary hearing. Petitioner would be entitled to an evidentiary hearing on disputed facts if his allegations, if proven, would entitle him to relief. *Perez v. Rosario*, 459 F.3d 943, 954 n.5 (9th Cir. 2006); *Williams v. Calderon*, 52 F.3d 1465, 1484 (9th Cir. 1995). He is not entitled to an evidentiary hearing because he has failed to present any allegations which, if proven, would entitle him to relief, because none of his claims have survived review under 28 U.S.C. § 2254(d)(1).